ISHEE, J.,
 

 for the Court:
 

 ¶ 1. Paul Moore was convicted of intimidating a witness, and he was sentenced by the Circuit Court of Hinds County to five years in the custody of the Mississippi Department of Corrections. Moore now appeals and asserts: (1) the trial court erred in denying his motion for a new trial after the State failed to comply with discovery rules regarding an immunity agreement between the State and the victim, and (2) the trial court erred in denying his motion for a new trial because the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On February 1, 2008, Moore’s brother, Sharrod Moore, was arrested and charged with the capital murder of Jackson Police Officer R.J. Washington. Shar-rod was indicted and arrested based on statements made by Harold Hackett. The next day, Hackett filed a complaint against Moore. In his complaint, Hackett claimed Moore had made a threat to kill him if he did not recant his statement to the police that Sharrod told him that he had killed Officer Washington.
 

 ¶ 3. At Moore’s trial, Tamara Cheatham testified she was with Hackett at the Van Winkle Pool Hall (pool hall) when Moore walked in and asked to talk to Hackett. Moore and Hackett then went outside. Cheatham stated that she overheard Moore tell Hackett that “he needed to go down to the police department and tell them he had lied.” According to Cheatham, Moore showed Hackett his gun and then allowed Hackett to walk away.
 

 ¶ 4. Hackett’s cousin, Cory Brown, testified that he was also with Hackett at the pool hall when Moore came in and asked to speak with Hackett outside. According to Brown, Hackett came back inside the pool hall and told Brown to “come on and hurry up and come outside.” Brown stated that he walked outside and heard Moore say to Hackett “I come here to kill you for my
 
 *619
 
 brother.” Brown testified that Moore had a gun and pointed it at Hackett, and Moore told Hackett that he “should kill him right then.” Brown and Hackett then got into Hackett’s vehicle and left the pool hall.
 

 ¶ 5. Jackson Police Officer Reggie Jones testified that he was contacted by Hackett on the night the incident occurred at the pool hall. Officer Jones stated that Hack-ett told him that Hackett had a confrontation with Moore and that Moore had threatened to kill Hackett for talking about “some charges that had been brought up about Sharrod Moore.” Officer Jones told Hackett to go down to the Jackson Police Department and file a complaint against Moore.
 

 ¶ 6. Hackett then went to the police department and filed a complaint against Moore. Moore was then arrested and charged with intimidating a witness. A Hinds County grand jury indicted Moore, and a trial was held in the Hinds County Circuit Court. At trial, Hackett repeatedly stated on the witness stand that he did not want to testify. Hackett stated that he feared for his life and the lives of his family members. Hackett testified that someone had pulled a gun on him at the pool hall, but he testified it was not Moore.
 

 DISCUSSION
 

 ¶ 7. Moore contends that the trial court erred in denying his motion for a new trial after the State failed to disclose an immunity agreement with Hackett. Hackett’s immunity agreement with the State gave him “absolute immunity from prosecution for any part he may have played in the commission of any such crime investigated.” Moore contends that the State had a duty to timely disclose the existence of the immunity agreement and failed to do so. Moore asserts that the failure of the State to disclose the immunity agreement violated Moore’s rights under the Confrontation Clause and the rules of discovery.
 

 ¶ 8. It is well-settled law that “reversible error results when evidence of an immunity agreement between the State and its key witness is removed from the jury’s consideration.”
 
 Slaughter v. State,
 
 815 So.2d 1122, 1129 (¶ 34) (Miss.2002). However, any error assigned to the lack of production of the immunity agreement between Hackett and the State is harmless when considering the overwhelming evidence of Moore’s guilt. “An error is harmless only when it is apparent on the face of the record that a fair[-]minded jury could have arrived at no verdict other than that of guilty.”
 
 Jefferson v. State,
 
 818 So.2d 1099, 1112 (¶ 36) (Miss.2002). Two eyewitnesses testified that Moore had intimidated and threatened Hackett to withdraw his statement and affidavit given to the police that implicated Moore’s brother, Sharrod, in the murder of Officer Washington. Accordingly, we find that the jury was provided direct evidence regarding the intimidation of Hackett.
 

 ¶ 9. Hackett’s immunity agreement was immaterial to Moore’s defense when considering the overwhelming evidence of Moore’s guilt. Consequently, we find no prejudicial error was committed, and this issue is without merit.
 

 ¶ 10. Moore asserts that his guilty verdict is against the overwhelming weight of the evidence because Hackett unwillingly testified before the court and because Hackett recanted his original statement he had made to the police.
 

 ¶ 11. In
 
 Bush v. State,
 
 895 So.2d 886, 844 (¶ 18) (Miss.2005), the supreme court discussed appellate review of the weight of the evidence supporting a jury’s verdict:
 

 When reviewing a denial of a motion for a new trial based on an objection to the
 
 *620
 
 weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.... However, the evidence should be weighed in the light most favorable to the verdict. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict. Rather, ... the court simply disagrees with the jury’s resolution of the conflicting testimony. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Instead, the proper remedy is to grant a new trial.
 

 ¶ 12. While it is true that Hackett gave conflicting testimony on the witness stand, it is clear from the record and the two eyewitnesses, Cheatham and Brown, that Moore did in fact intimidate Hackett to change his original statement that he had given to the police.
 

 ¶ 13. On our review of the record, viewing the above evidence in a light most favorable to the verdict, we find that the jury’s verdict is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
 

 ¶ 14. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF INTIMIDATING A WITNESS AND SENTENCE OF FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.